IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **FIRST INTERSTATE AVON, LTD.,** | ) | CASE NO.  1:19 CV 2079 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| | ) | |
| **COST PLUS, INC.,** | ) | **MEMORANDUM OPINION** |
| **d/b/a WORLD MARKET,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on the Motion for Summary Judgment filed by Plaintiff, First Interstate Avon, Ltd. (Docket #16) and the Motion for Summary Judgment filed by Defendant, Cost Plus, Inc d/b/a World Market (Docket #17).

I.  **Factual and Procedural Background.**[1]

The pertinent facts in this matter are not in dispute. On February 28, 2000, the Parties entered into a Lease Agreement, by which Cost Plus leased approximately 18,300 square feet in the Avon Commons Shopping Center, which is owned by First Interstate. Since that time, Cost

---

[1] The facts as stated in this Memorandum Opinion and Order are taken from the Parties' submissions. Those material facts that are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to the non-moving Party.

Plus has continuously operated a World Market Store in that space. The initial term of the Lease was 10 years. The Lease was amended twice thereafter to extend the lease term – first in 2011 and again in 2014 ("the Second Amendment"). The Second Amendment extended the lease term to 2024 and also gave Cost Plus a "kickout right," by which Cost Plus could terminate the Lease after 5 years if Cost Plus's Gross Sales[2] failed to reach a certain threshold. The "Kickout Clause" reads as follows:

> Notwithstanding anything to the contrary contained in this Lease, in the event that Tenant's Gross Sales for the period February 1, 2018 through January 31, 2019 (the 'Measuring Period') do not exceed Three Million Two Hundred Thousand Dollars ($3,200,000), Tenant may, at its option, elect to terminate this Lease within one hundred twenty (120) days following the end of such Measuring Period by delivering to Landlord written notice of such cancellation along with a written report of Tenant's Gross Sales for such period prepared in accordance with Section 8 of the Lease (the 'Cancellation Notice'), which Cancellation Notice shall provide that this Lease shall terminate and thereafter be null and void as of the date which is one hundred twenty (120) days after the date of the Cancellation Notice (the 'Surrender Date'). All Fixed Rent and Additional Rent shall be prorated, if necessary, and paid through the Surrender Date.

Lease, Second Amendment, Section 5 (emphasis in original). As set forth above, the written report of Gross Sales is to be prepared in accordance with Section 8 of the Lease. Section 8.2 of the Lease, entitled "Gross Sales Statement," requires as follows:

---

[2] "Gross Sales," as defined in the Lease, includes the "revenue received by Tenant from the selling price of all merchandise or services sold in or from the Store by Tenant, its subtenants, licensees and concessionaires, whether for cash or for credit," less several categories of exclusions, including, among other things, credits to customers, taxes, certain discounts and alcohol sales. See Lease at § 2.1(g). Additionally, discounts received by customers using coupons, for example, are not included in Gross Sales because those coupons do not represent revenue received by the store. Deposition of Seth Gledzahler at 54:13-23.

-2-

> Within seventy-five (75) days after the close of each Lease Year, Tenant shall submit to Landlord a statement indicating the amount of its Gross Sales for the previous Lease Year. Tenant shall accompany such a statement with payment of the Percentage Rent due, if any, after all deductions and offsets. Landlord covenants to keep such information confidential; provided that Landlord may disclose such information to its mortgagees, potential purchasers of the Shopping Center, its accountants, and attorneys.

The Lease contains no other requirements for disclosing Gross Sales to Plaintiff. However, Section 8.3 of the Lease, entitled "Maintenance of Records," requires Cost Plus to maintain adequate records so that First Interstate may audit such records, subject to the conditions set forth therein, if necessary.

In February 2019, Cost Plus sent First Interstate its annual Gross Sales statement in accordance with Section 8.2 of the Lease. The statement reflected that Gross Sales during the Measuring Period – February 2018 through January 2019 – had fallen below the threshold in the Kickout Clause. The Kickout Clause gave Cost Plus until May 31, 2019 to serve Plaintiff with a Cancellation Notice to terminate the Lease. Once Cost Plus served a Cancellation Notice of Termination, the Lease would then terminate 120 days later.

Cost Plus and First Interstate attempted to negotiate a new lease arrangement, but in May 2019 had not reached an agreement. On May 29, 2019, Cost Plus sent a Cancellation Notice letter to First Interstate, via FedEx, which stated as follows:

> Please take notice that Tenant hereby exercises its right to terminate the Lease pursuant to Section 5 of the Second Amendment to Lease Agreement dated as of July 5, 2013 ("Second Amendment). Therefore, the Lease will be deemed terminated effective July 31, 2021.

(Docket #21-6.) The letter did not include the "written report of Tenant's Gross Sales for such period prepared in accordance with Section 8 of the Lease," as required under Section 5, and

-3-

erroneously indicated that the Lease would be deemed terminated effective July 31, 2021, contrary to the 120-day termination provision. On May 29, 2019, First Interstate sent Cost Plus a letter indicating as follows:

> Please note that the Landlord does not acknowledge such letter as a valid Cancellation Notice and rejects such letter as it failed to include Tenant's Gross Sales report for the Measuring Period pursuant to Section 5 of the Second Amendment. If Tenant intends to exercise its right under Section 5, please send us the Gross Sales report prior to the date required for delivery of the Cancellation Notice under the Lease.

(Docket #21-7.) First Interstate's May 29, 2019 Letter to Cost Plus was signed by Jeffrey A. Sayoc, Associate General Counsel of First Interstate.

On May 31, 2019, Cost Plus sent a letter via FedEx and Email to Mr. Sayoc, stating as follows:

> We are in receipt of the letter of Jeffrey A. Sayoc of your office dated May 30, 2019 rejecting Tenant's Termination Letter dated May 29, 2019 alleging that it did not include Tenant's Gross Sales report for the Measuring Period.
>
> Please note that Tenant sent Landlord such Gross Sales report on February 11, 2019 (copy enclosed) eleven (11) days after the Measuring Period. Therefore, we consider the delivery of the report on February 11, 2019, the Termination Letter on May 29, 2019, and this notice with the enclosed copy of the report, to together constitute more than ample notice of the exercise of Tenant's termination rights, and the Lease will be terminated effective September 28, 2019.

(Docket #21-8.) While First Interstate will not confirm receipt of the May 31, 2019 email, it states it did receive the letter via FedEx on June 3, 2019.

Cost Plus continues to occupy the space and pay base rent. First Interstate has not attempted to find a new tenant.

On July 24, 2019, First Interstate filed its Complaint against Cost Plus in the Cuyahoga

-4-

County Court of Common Pleas, Case No. CV 19 918727, asserting claims for Breach of Lease (Count I) and Anticipatory Breach (Count II), and asking for Declaratory Judgment (Count III) finding that Cost Plus as a Lease Term that runs to January 31, 2024 and that any purported Cancellation Notice is ineffective and improper. The case was removed to this Court by Cost Plus on September 11, 2019.

**II.     Motions for Summary Judgment.**

The Parties filed their respective Motions for Summary Judgment on July 23, 2020 (Docket #16) and July 24, 2020 (Docket #17). First Interstate argues that strict compliance with the language of Section 5 was necessary to exercise the early termination option – specifically that the Notice of Cancellation sent by Cost Plus did not include the necessary Gross Sales report required under Section 5 and, that even if the Gross Sales statement provided by Cost Plus was sufficient, the Notice of Cancellation was late. Cost Plus argues that it substantially, if not fully, complied with the requirements for terminating the Lease and that the Court should dismiss First Interstate's claims. The Parties filed Response and Reply Briefs and a hearing on the Parties' Motions for Summary Judgment was held via video conference on September 25, 2020.

**III.    Motion to Strike.**

First Interstate filed a Motion to Strike the Declaration of Michael Lodge, attached to Cost Plus's Motion for Summary Judgment and Opposition Brief. (Docket #20.) Mr. Lodge is the Director of Financial Planning and Analysis for Cost Plus. Mr. Lodge's Declaration – 6 sentences total – explains how internet sales were accounted for in the Gross Sales figures reported by Cost Plus. Mr. Lodge's Declaration supplements the deposition testimony of Cost Plus's Fed. R. Civ. P. 30(b)(6) corporate representative, Kaitlyn Clark, who did not know how

internet and certain other types of sales were accounted for in the sales spreadsheet referenced during her deposition, as it relates to Gross Sales.  The Parties disagreed as to whether Ms. Clark was an adequate 30(b)(6) witness, both during deposition and in a later email exchange.  Counsel for Cost Plus stated at the end of Ms. Clark's deposition, "You have the testimony you need on these topics . . . If you're going to insist on another witness, we're probably going to have to discuss it with the judge."  In the subsequent email exchange, Cost Plus indicated that it would be including Mr. Lodge's Declaration with its Motion for Summary Judgment to supplement Ms. Clark's testimony.  First Interstate did nothing to formally request or compel any additional witness testimony thereafter, nor did it exercise its right to inspect Cost Plus's financial records, instead filing the instant Motion to Strike a month later.

Mr. Lodge's Declaration does not contradict Ms. Clark's testimony, as suggested by First Interstate.  Rather, it was offered to supplement and clarify Ms. Clark's deposition testimony because she did not know the answer.  The Court finds no basis upon which to strike Mr. Lodge's Declaration.  The Motion to Strike (Docket #20) filed by First Interstate is denied.

**IV.   Standard of Review.**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(a).  The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. Ohio 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. Mich. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. Ky. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### V.  Discussion.

First Interstate argues that strict compliance with the language of Section 5 of the Second Amendment was necessary to exercise the early termination option and that Cost Plus's Notice of Cancellation was late and failed to include the necessary Gross Sales report.

As previously recognized by this Court, even though the language of a lease may be clear and unambiguous, equitable relief may be granted to relieve a lessee from the consequences of a failure to give notice at the time, or in the form and manner required as a condition precedent, where the failure results from accident, fraud, surprise or honest mistake and has not prejudiced the lessor. *Sierra 76, Inc. v. TA Operating LLC*, 848 F. Supp. 2d 812, 817 (N.D. Ohio 2012)

(citing *KeyBank NA v. MRN Ltd. Partnership*, 193 Ohio App.3d 424, 2011 Ohio 1934, 952 N.E.2d 532 (8th Dist. 2011*); Vivi Retail, Inc. V. E&A Northeast LP*, 2008 Ohio 4705, 2008 Ohio App. LEXIS 3953 (8th Dist. 2008); *Ward v. Washington Distributors, Inc.*, 67 Ohio App.2d 49, 53, 425 N.E.2d 420 (1980)).

Cost Plus initially sent its Cancellation Notice to First Interstate via FedEx on Wednesday, May 29, 2019, prior to the May 31, 2019 deadline. There is no evidence that the failure to include a copy of the written report of Gross Sales report, which had already been received by First Interstate in February 2019, or the fact that the termination date set forth in the Cancellation Notice was incorrect, was the result of anything more than an honest mistake. More importantly, upon being informed of errors by First Interstate, Cost Plus corrected the Cancellation Notice and sent a copy by email on Friday, May 31, 2019, along with a copy by FedEx which was received by First Interstate on Monday, June 3, 2019. The question is not whether the rightful termination of the Lease may have unfavorable consequences for First Interstate, as the loss of a tenant under any circumstances may undoubtedly result in some hardship. Rather, the question is whether First Interstate was prejudiced by Cost Plus's mistakes in providing notice. There is no evidence that the mistakes in the original Cancellation Notice, or the fact that the paper copy was not received by someone at First Interstate until after the weekend, prejudiced First Interstate in any way.

Furthermore, there is nothing in the Lease or Second Amendment to suggest that anything other than the Gross Sales statement provided by Cost Plus was required to be included with the Cancellation Notice. First Interstate received the Gross Sales statement, prepared in accordance with Section 8 of the Lease, from Cost Plus in February, and again with the

Cancellation Notice. The fact that Section 5 of the Second Amendment references a "report" and Section 8 of the Lease references a "statement," is immaterial, as Section 5 specifically states that the Gross Sales information shall be provided as required under Section 8, and there is no evidence to suggest either would include less or additional information for purposes of notice. Had First Interstate sought to dig deeper into the Gross Sales numbers for the reporting period, Section 8.3 of the Lease provides a means for doing so and, despite discussions regarding additional witnesses, no formal action was taken by First Interstate to compel additional depositions or discovery. There is no evidence before the Court that the gross sales for the time period in question exceeded the threshold for cancellation.

## VI. Conclusion.

For the foregoing reasons, the Motion for Summary Judgment filed by First Interstate (Docket #16) is hereby DENIED. The Motion for Summary Judgment filed by Cost Plus (Docket #17) is hereby GRANTED. Cost Plus is entitled to summary judgment as to all of the claims asserted by First Interstate.

First Interstate's Motion to Strike (Docket #20) is hereby DENIED.

Cost Plus may file a Motion for Attorney Fees, with supporting documentation, within 10 days of this Order. First Interstate shall have 10 days thereafter to respond.

IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
Senior United States District Judge

DATED: October 13, 2020